645 A.2d 269

**In re A.J. ADAMS.**

**Appeal of A.J. ADAMS.**

Superior Court of Pennsylvania.

Argued May 26, 1994.

Filed July 28, 1994.

Petition for Allowance of Appeal Denied Dec. 19, 1994.

Chris R. Eyster, Pittsburgh, for appellant.

Kenneth A. Zak, Asst. Dist. Atty., Erie, for Commonwealth, participating party.

Before BECK, HUDOCK and CERCONE, JJ.

BECK, Judge:

This is an appeal from a judgment of sentence imposed for two counts of criminal contempt.

The trial court held appellant, A.J. Adams, in direct criminal contempt of court on two separate occasions during a trial in which appellant was acting as defense counsel. Following the trial, the court imposed two $300 fines and two consecutive 90 day probationary sentences with the condition that appellant undergo a drug and alcohol assessment as well as a psychological evaluation. The superior court granted a stay of sentence. The trial court granted appellant's request for modification to the extent that it made the two probationary sentences concurrent and deferred the psychological evaluation. Appellant filed a timely appeal.

Appellant is a first assistant public defender who represents indigent defendants in Erie County. In this case, appellant was representing Ruben Garcia who was charged with possession of cocaine and possession with intent to deliver cocaine. Appellant argued that a police informant planted the cocaine in his client's pants and vehicle. Appellant also argued that the beeper found on Garcia belonged to someone else and was being used for legitimate purposes.

An initial problem developed on the first day of trial after appellant began to develop the theory that Garcia was using the beeper for legitimate purposes. The trial judge observed that Garcia's interpreter had a beeper that she had placed on the defense table in view of the jury. The trial court properly admonished the interpreter and appellant and directed them to remove the beeper. In light of the defendant's position, the otherwise harmless presence of the beeper took on symbolic significance.

On the second day of trial, the trial judge admonished appellant at sidebar for starting to "carry on." Shortly thereafter, the court was conducting an in-chambers discussion and an examination of a prosecution witness at which appellant became agitated. In chambers, the court warned him to calm down. A few minutes later, the court again warned him to be careful. The court indicated that while still in chambers appellant became extremely agitated and started shaking his head in an exaggerated fashion, raising his voice, and making gestures indicating his unhappiness with the witness' testimony. At that point, the trial judge asked everyone to leave his chambers in order to talk privately to appellant about his conduct.

Later in front of the jury, appellant portrayed exaggerated expressions of "extreme surprise" and disagreement in response to certain testimony. Appellant had just heard this same testimony at the in camera hearing. At one point, appellant flung his hands up and shook his head in order to convey his disbelief with the witness' testimony. The prosecution objected. At sidebar, the court expressed its shock at the inappropriateness of appellant's conduct and indicated that it would address the issue with appellant after the trial.

Appellant then refused to stop addressing a question to a witness when the trial judge interrupted to clarify what was becoming a confusing examination. Appellant raised his voice to speak above the court. He refused to stop speaking a second time as well. The court was forced to remove the jury from the courtroom and once again admonish appellant for his increasingly inappropriate conduct. The court warned appel-

lant that the next time he failed to perform his role properly, the court would hold him in contempt.

On the morning of the third day of trial, appellant continued with the histrionics by making faces in front of the jury displaying his displeasure with a line of questioning that the court allowed the prosecution to follow. At this point, the court called for another sidebar discussion where it held appellant in contempt.

Later that same day, appellant made a statement in his closing argument indicating his personal belief about Garcia's knowledge of the drugs in his possession. The prosecution objected and the court appropriately warned appellant and instructed the jury. A few minutes later appellant made another statement of personal opinion. The prosecution once again objected. The court then held appellant in contempt for a second time.

Appellant raises three issues on appeal: 1) whether the trial court erred in holding appellant in direct criminal contempt of court; 2) whether appellant's counsel was ineffective for failing to request at sentencing that the trial judge recuse himself; and 3) whether the trial court abused its discretion in sentencing appellant. For the reasons stated herein, we affirm.

First, appellant argues that the trial court erred in holding him in criminal contempt of court. In order to sustain a direct criminal contempt citation, there must be proof of four elements beyond a reasonable doubt: 1) misconduct; 2) in the presence of the court; 3) committed with the intent to obstruct the proceedings; 4) which obstructs the administration of justice. *Commonwealth v. Martorano*, 387 Pa.Super. 79, 86–87, 563 A.2d 1193, 1197 (1989), *allocatur denied,* 529 Pa. 630 and 632, 600 A.2d 950 and 952 (1991). When reviewing the propriety of a contempt conviction, we place great reliance upon the discretion of the trial judge; therefore, we are confined to a determination of whether the facts support the trial court's decision. *Id.*

The first element is misconduct. Misconduct is behavior that is "inappropriate to the role of the actor." *Commonwealth v. Garrison,* 478 Pa. 356, 372, 386 A.2d 971, 979 (1978). "An attorney engages in misconduct if his behavior is calculated to hinder the search for the truth." *Id.* Appellant's behavior which the trial court characterized as "histrionics" was inappropriate for an attorney in court because it distracted from the issues at trial. Appellant's behavior forced the court to delay the proceedings a number of times in order to attempt to have appellant behave properly. Appellants conduct also hindered the search for the truth. Appellant's behavior during closing arguments was also inappropriate because it violated an order from the court as well as the rule that counsel is not permitted to argue alleged personal belief concerning credibility of witnesses or the merits of the case. Appellant's insertion of his opinion also hindered the search for the truth because it served to focus the jury's attention on his personal opinion rather than on the facts in question.

The second element requires the behavior to occur in the presence of the court. Appellant's behavior occurred during trial in the presence of the jury and the trial judge.

The third element requires that the misconduct occur with the intent to obstruct the proceedings. There is wrongful intent if the contemnor " 'knows or should reasonably be aware that his conduct is wrongful.' " *Id.* (citations omitted). It does not matter that appellant was acting in good faith by zealously defending his client. *Commonwealth v. Falkenhan,* 306 Pa.Super. 330, 339–40, 452 A.2d 750, 755 (1982), *cert. denied,* 464 U.S. 803, 104 S.Ct. 49, 78 L.Ed.2d 69 (1983). After repeated warnings from the trial court as to the inappropriateness of his behavior during trial and closing argument, appellant knew that his conduct was wrongful. The court also points out that appellant is an experienced defense attorney. As an attorney with great trial experience, he should reasonably have been aware that his conduct was wrongful because it resulted in objections from the prosecutor and serious warnings from the court. An experienced trial attorney, such as appellant, should reasonably be aware that when the court

warns that certain conduct is contemptuous, the conduct is wrongful.

■ The fourth element requires that the misconduct result in an obstruction of the administration of justice. In order to find such an obstruction, it is sufficient that the conduct in question interfere with or otherwise disrupt the orderly conduct of a court proceeding. *Id.* Appellant's conduct obstructed the administration of justice because it disrupted the proceedings by forcing the jury and the trial judge to focus on his histrionics rather than on the issues of the case. The trial court points out that appellant's conduct in front of the jury was an attempt to make it "A.J. Adams' trial" rather than an adversarial proceeding. As such, he was subverting the truth-seeking process. His behavior leading up to the contempt charges also resulted in delays during the trial. His theatrics caused numerous interruptions including sidebar discussions and the removal of the jury from the courtroom. Similarly, the first contempt charge resulted in a sidebar discussion that delayed the trial. Appellant's conduct during closing argument required two objections by the prosecution, two instructions to the jury, and a sidebar discussion. Appellant's conduct caused constant delays and interfered with and disrupted the orderly conduct of the proceedings; therefore, his conduct obstructed the administration of justice.

Appellant's behavior which the court held contemptuous was misconduct in the presence of the court that was committed with the intent to obstruct proceedings and it obstructed the administration of justice; therefore, the trial court did not err in holding appellant in direct criminal contempt of court.

■ Second, appellant argues that his counsel was ineffective for failing to request that the trial judge recuse himself from sentencing. In general, a judge before whom contemptuous conduct occurs has the power to impose punishment for such conduct and appropriate sanctions without recusing himself. *Commonwealth v. Reid,* 494 Pa. 201, 209–210, 431 A.2d 218, 223 (1981); *Falkenhan,* 452 A.2d at 756. However, recusal is required if there is a running, bitter controversy

between the judge and offender. *Falkenhan,* 452 A.2d at 756. The record shows that appellant had previously appeared in the trial judge's courtroom and that prior to this trial the trial judge had warned appellant about the inappropriateness of his behavior.

Although the controversy was a running one, it was not bitter. During trial, the judge went out of his way to warn appellant about the consequences of his behavior until he finally had no choice but to hold appellant in contempt. Under the circumstances, the judge showed great patience with appellant. The record also shows that although the court did not find this particular aspect of appellant's behavior to be proper, it recognized and respected appellant's skill as an attorney.

It would have been frivolous for appellant's counsel to ask the trial judge to recuse himself from sentencing because the controversy was not bitter. Counsel cannot be ineffective for failing to file a frivolous claim; therefore, appellant's counsel was not ineffective for failing to request at sentencing that the trial judge recuse himself. *Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989).

■ Third, appellant argues that the trial court abused its discretion by imposing two $300 fines and two concurrent 90 day probationary periods with the condition that appellant undergo a drug, alcohol, and psychological evaluation.

■ Sentencing is a matter vested in the sound discretion of the trial court and we will not disturb the judgment of sentence absent an abuse of discretion. *Commonwealth v. Lott,* 398 Pa.Super. 573, 586–87, 581 A.2d 612, 619 (1990), *allocatur denied,* 527 Pa. 663, 593 A.2d 839 (1991) (citations omitted). When reviewing sentencing matters, we must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. *Id.*

Generally, direct criminal contempt is punishable by fine or imprisonment. 42 Pa.C.S.A. § 4133. However, the trial court

may, in imposing sentence for contempt, choose among the sentencing alternatives authorized by the Code. *Commonwealth v. Rubright*, 489 Pa. 356, 361, 414 A.2d 106, 108 (1980). An order of probation is among these sentencing alternatives. 42 Pa.C.S.A. § 9721. The sentence of a fine and probation imposed by the trial court is supported by the record, and, we conclude that the trial judge did not abuse his discretion.

The court realized that there must be some underlying reason for appellant's inability to control himself. However, appellant was unable to offer an explanation. As a result, the trial court required appellant to undergo a drug, alcohol and psychological evaluation as a condition of probation. Such a condition of probation is not patently excessive even though it may cause appellant embarrassment because the purpose of the condition is to assess the reason for appellant's misconduct and to prevent similar future conduct. The trial court did not abuse its discretion in issuing appellant's sentence.

Appellant argues that the court abused its discretion because the sentence will have a "chilling effect" on the type of conduct engaged in by appellant. Appellant argues that the United States Supreme Court condemns sentences that would hinder counsel's ability fearlessly to defend a client. However, appellant misconstrues the trial court's intent. As advocates in an adversary system, counsel must be afforded significant latitude vigorously to pursue their client's cause. Such obligation, however, in no way lessens the lawyer's absolute duty to respect and uphold the dignity of the judicial process. *Rubright*, 489 Pa. 364, 414 A.2d at 110. The court stated that appellant's behavior had nothing to do with advocacy and that his conduct could have jeopardized his client's interests. As a result, the court's decision does not hinder counsel's ability fearlessly to defend his client.

For these reasons we affirm the judgment of sentence imposing two $300 fines and two concurrent 90 day probationary periods with the condition that appellant undergo a drug, alcohol, and psychological evaluation.

Judgment of sentence affirmed.