COMMONWEALTH of Pennsylvania

v.

Kenneth D. MUTZABAUGH,
Jr., Appellant.

Superior Court of Pennsylvania.

Argued April 17, 1997.
Filed Aug. 13, 1997.

David W. Barron, Lewistown, for appellant.

Ralph A. Germak, Assistant District Attorney, McAlisterville, for the Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

CAVANAUGH, Judge.

This is an appeal from the judgment of sentence of ninety days imprisonment, imposed after the trial court found appellant Kenneth D. Mutzabaugh guilty of direct criminal contempt. We affirm.

On May 7, 1996, appellant appeared before the Honorable Keith B. Quigley in regard to his request for early parole or, alternatively, work release in relation to a six to eighteen month sentence he was then serving in the Juniata County Prison. The court denied appellant's request for early parole and informed him to solicit employment and to file a work release application. Appellant and the court then engaged in a brief colloquy during which appellant became angered while relating that he should not be in jail, that it was all a mistake and that he had been treated unfairly. At this point, the court stated, "We're done." Appellant got up from his chair, walked toward the door and while passing the judge stated, "You can go to hell. Fuck you." As appellant was a county prisoner at the time, a deputy sheriff pursued and apprehended him. The court

held appellant in direct contempt of court and directed that a hearing be scheduled before a visiting judge as soon as possible.

At appellant's contempt hearing, the Commonwealth presented three witnesses who were present at the prior hearing at which the contempt citation was issued, as well as the transcript of that conclusion of the hearing, the Honorable Stewart L. Kurtz found appellant guilty of direct criminal contempt and sentenced him to ninety days imprisonment. This appeal followed.

■ Appellant first contends that he was denied due process for the lack of specificity in the charging document. Our courts unquestionably have the power to punish willful misconduct which obstructs a fair and orderly trial; and this power includes the power to impose summary criminal contempt. *Commonwealth v. Garrison*, 478 Pa. 356, 365, 386 A.2d 971, 975 (1978). In general, a citation in a summary case must contain both the specific statute violated and a brief factual summary sufficient to give the defendant notice of the nature of the offense charged. *Commonwealth v. Zullinger*, 450 Pa.Super. 533, 536, 676 A.2d 687, 688–89 (1996). A variance between the citation or indictment and the proof at trial is not fatal if it still gives the defendant sufficient notice and does not cause surprise which is prejudicial to the defense. *Id.*

Here, Judge Quigley's order stated, in pertinent part, "[D]efendant lost his temper [and] used threatening and obscene language to the Court which constitutes a direct contempt situation." Clearly, appellant was neither surprised nor prejudiced as the conduct charged via the court's order was not at variance with the conduct proven by the Commonwealth at trial. The focus of both the Court's decision and the evidence offered by the Commonwealth was appellant's loss of temper and his direction of obscene language to the Court. No other evidence was presented by the Commonwealth. There was no variance between the conduct charged and the conduct proven by the Commonwealth. As such, appellant was neither surprised nor prejudiced. *Cf. Zullinger, supra* (defendant's conviction reversed where he was surprised and prejudiced by variance between conduct charged and conduct proven at trial;

in addition to conduct charged, court considered other evidence of previous encounters and occurrences which were presented for first time at trial).

■ Appellant next contends that the trial court erred in allowing the transcript of the May 7, 1996 hearing, at which he was cited for contempt, to be admitted into evidence over his hearsay and right to confrontation objections.

We begin our analysis with reference to two pertinent sections of the Judicial Code. 42 Pa.C.S.A. provides:

§ 6104. **Effect of official records generally**

(a) **General rule.**—A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.

(b) **Existence of facts.**—A copy of a record authenticated as provided in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness.

Additionally, 42 Pa.C.S.A. § 6106 provides:

§ 6106. **Certified exemplifications of records**

Whenever provision is made by law for recording or filing in a public office any document, the record thereof made, and exemplifications of the document lawfully certified, shall be legal evidence in all matters in which the document would be competent evidence.

We reject appellant's contention that the transcript of the May 7, 1996 hearing, at which appellant was cited for contempt, was inadmissible hearsay. The record of that proceeding was transcribed by a court reporter as part of her official duty and filed as the official record in appellant's criminal

case. The transcript was certified by the court reporter as a complete and accurate record of the proceedings and was also notarized. The court reporter was also available and prepared to testify at appellant's contempt hearing. Finally, the transcript was material and competent evidence in regard to the charge of direct criminal contempt. Pursuant to §§ 6104 and 6106, the transcript, as an official record, was admissible at appellant's contempt hearing. *See Williams v. Williams*, 452 Pa.Super. 52, 681 A.2d 181 (1996) (official transcript which was recorded by court reporter was admitted as evidence in subsequent hearing on contempt).

■ We also note that in addition to admitting the transcript as evidence, the trial court properly took judicial notice of the relevant portions of the transcript. *See Commonwealth v. Harris*, 315 Pa.Super. 544, 462 A.2d 725 (1983)(trial court may take judicial notice of uncontested portions of a judicial record).

■ Finally, we note that appellant's right to confrontation was not infringed. Although Judge Quigley was not called by the Commonwealth to testify, appellant could have issued a subpoena and called him as a witness. In any event, it was the conduct of appellant which was directly at issue in this case and not that of Judge Quigley. Any testimony which Judge Quigley could have provided regarding appellant's conduct would have merely been cumulative of the other witnesses called in the case. This issue is meritless.

In his final issue, appellant contends that the evidence was insufficient to prove that he was in direct criminal contempt, as there was no obstruction of justice because the proceeding had concluded before he made the remarks at issue to Judge Quigley.

■ In order to sustain a direct criminal contempt citation, the following elements must be proven beyond a reasonable doubt:

(1) misconduct;

(2) in the presence of the court;

(3) committed with the intent to obstruct the proceedings;

(4) which obstructs the administration of justice.

*In re Adams*, 435 Pa.Super. 202, 206, 645 A.2d 269, 271 (1994). When reviewing the propriety of a contempt conviction, great reliance is placed upon the discretion of the trial judge. *Commonwealth v. Martorano*, 387 Pa.Super. 79, 87, 563 A.2d 1193, 1197 (1989). Accordingly, we are confined to a determination of whether the facts support the trial court's decision. *Id.*

■ After carefully reviewing the record in this case in light of the applicable case law, we conclude that there was sufficient evidence to sustain a conviction for direct criminal contempt beyond a reasonable doubt. The first and second elements of the offense, misconduct in the presence of the court, have clearly been proven. Misconduct is behavior that is inappropriate to the actor. *Commonwealth v. Garrison*, 478 Pa. 356, 372, 386 A.2d 971, 979 (1978). Appellant's loss of temper, his storming out of the courtroom and his direction of profanity at the trial judge all constitute behavior which is inappropriate and unacceptable by any person appearing before the court.

■ The third element, an intent for the misconduct to disrupt the proceedings, has also clearly been proven. Wrongful intent exists where the contemnor knows or should reasonably be aware that his conduct is wrongful. *Garrison, supra.* Here, appellant has appeared before the court as a criminal defendant on several prior occasions. As such, he would be aware of the seriousness of court proceedings, the proper decorum to be observed during such proceedings and the proper respect to be accorded the trial judge. Moreover, it is unreasonable to suggest that even a person appearing in court for the first time would not realize that such egregious conduct, as that demonstrated by appellant in this case, was not wrongful.

■ The final element requires that we consider whether appellant's misconduct

constituted an obstruction of the administration of justice. Conduct constituting an obstruction of the administration of justice has been defined narrowly as a significant disruption in judicial proceedings. *Commonwealth v. Cameron*, 501 Pa. 572, 575, 462 A.2d 649, 650 (1983). Neither injudicious remarks nor affronts to the dignities or sensibilities of the court will, without more, support a conviction for direct criminal contempt. *Garrison, supra* at 373, 386 A.2d at 979. Moreover, inappropriate or even ill-mannered conduct which does not obstruct or delay the trial does not constitute conduct punishable by direct criminal contempt. *Moffatt by Moffatt v. Buano*, 391 Pa.Super. 1, 6, 569 A.2d 968, 970 (1990).

A careful review of the events which occurred before Judge Quigley and which prompted his finding appellant in contempt, lead us to conclude that the evidence established that an obstruction of the administration of justice occurred. At the time of the proceeding before Judge Quigley, appellant was a prisoner in the Juniata County Prison. Becoming enraged during his colloquy with Judge Quigley, appellant stormed toward the exit, telling the Judge, "You can go to hell. Fuck you." Appellant's actions made it necessary for a deputy sheriff to pursue appellant and prevent him from leaving the courtroom. These actions clearly amounted to a significant disruption of the proceedings.

We note that Judge Quigley's statement to appellant, "We're done," immediately prior to appellant's outburst did not signal the end of the proceedings in this case. Judge Quigley had not yet entered an order or otherwise made a decision in the case before him. His statement, "We're done," merely signalled that he would no longer listen to appellant's claims that he had been unfairly treated. Court proceedings are concluded after the defendant leaves the courtroom, the trial judge goes to the next case or adjourns court and leaves the courtroom. None of these events occurred here. Appel-

lant's outburst occurred during the court proceeding and as explained *supra,* constituted an obstruction of the administration of justice.

We note that this Court's decision in *Williams v. Williams*, 452 Pa.Super. 52, 681 A.2d 181 (1996) does not require a contrary result. In *Williams,* defendant, during a custody hearing, became upset at one of the court's rulings and commented, "He's [the trial judge] such a fucking asshole." The trial court found defendant guilty of summary criminal contempt and sentenced him to three days imprisonment. On appeal, a panel of this Court reversed, concluding that defendant's remark did not obstruct the administration of justice. The panel pointed out that the trial judge did not hear defendant's remark and that the delay in the proceeding caused by defendant's remark was very brief. The present case differs significantly from *Williams.* Here, appellant's direct remark to the trial judge coupled with his attempt to leave the courtroom caused significant disruption as it was necessary for a deputy sheriff to pursue appellant and prevent his exit. As such, *Williams* is not controlling in the present matter.[1]

Having concluded that the offense of direct criminal contempt has been established beyond a reasonable doubt, we affirm the judgment of sentence imposed by the trial court.

Judgment of sentence affirmed.

---

1. We further note that our supreme court's recent decision in *Commonwealth v. Falana,* 696 A.2d 126 (Pa. 1997), supports our disposition in the present case.